William W. ADAMS, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

LAKESHORE COMMERCIAL FINANCE CORPORATION, Third-Party Defendant.

No. 72–C–40.

United States District Court,
E. D. Wisconsin.

March 17, 1975.

Ronald W. Sylvan, Kraemer, Binzak & Sylvan, Menominee Falls, Wis., for plaintiff.

Patrick Mullarkey, Daniel J. Dinan, Tax Div., Dept. of Justice, Washington, D. C., William J. Mulligan, U. S. Atty. by John Nelson, Asst. U. S. Atty., Milwaukee, Wis., for United States.

Weiss, Steuer, Berzowski & Kriger by Robert K. Steuer & John P. Brady, Milwaukee, Wis., for Lakeshore.

### DECISION and ORDER

MYRON L. GORDON, District Judge.

This matter is before me on the third-party defendant's renewed motions for summary judgment and for a preliminary injunction.

During the second and third quarters of 1970, the Skobis Company withheld federal income and employment taxes from the wages of its employees. However, these amounts were never paid over to the government.

Pursuant to 26 U.S.C. § 6672, the commissioner of internal revenue assessed a penalty equal to the amount not paid over against the plaintiff, William W. Adams, an officer of Skobis, and against the third-party defendant, Lakeshore Commercial Finance Corporation, a creditor of Skobis. The penalty was first assessed against Mr. Adams in the amount of $44,152.80. After he paid $405.68 of such amount, he filed a claim for refund which was disallowed. He then commenced this action for a refund of the amount paid and for a determination adjudicating the abatement of penalties assessed against him.

The defendant and third-party plaintiff United States counterclaimed against Mr. Adams for the unpaid balance of the penalty and filed a third-party complaint against Lakeshore, alleging that Lakeshore was liable for the payment of taxes due under § 6672 "as a person who wilfully failed to pay over federal income and employment taxes withheld from the wages of employees of the Skobis Company" in the amount of $43,747.12, the difference between the original amount assessed against Mr. Adams and the amount which he paid.

### I

In an order dated January 5, 1973, I granted Lakeshore's motion for summary judgment on the grounds that "there are no substantial factual issues for trial *and also* that Lakeshore was not a 'person' within the meaning of § 6672." 353 F.Supp. at 335. The court of appeals reversed. 504 F.2d 73. In so ruling, it determined, at p. 77, that

"summary judgment has been deemed inappropriate in cases where, as here, questions arise concerning whether a lending institution [Lakeshore] has

assumed such control over its debtor's [Skobis] business as to become a liable 'person' and whether the particular institution has acted willfully in preferring other creditors over the government within the meaning of § 6672, since such questions present material and substantial issues of fact. [citations omitted.] Since the conflicting affidavits [of William Adams and Lawrence Appel] in the present case involve such issues, we now hold that summary judgment was precluded in the court below."

Based upon the November 29, 1974, deposition of William Adams, Lakeshore seeks to have Mr. Adams' November 21, 1972, "affidavit opposing motion for summary judgment" stricken on the grounds that it "does not comply with the provisions of Rule 56(e) of the Federal Rules of Civil Procedure and was filed in bad faith as provided in Rule 56(g)."

According to Lakeshore, the Adams affidavit has given rise to the only issue of fact, and its elimination from consideration would thus clear the way for this court once again to grant "the motion for summary judgment of Lakeshore Commercial Finance Corporation previously filed herein on November 13, 1972." In its brief, Lakeshore maintains that

"The 7th Circuit reversed the Court's Decision on the theory that the Adams Affidavit raised triable issues of fact. However, the Adams deposition conclusively establishes that the Adams Affidavit was not based upon the personal knowledge required of an affidavit under Rule 56 of the Federal Rules of Civil Procedure; rather, the Adams affidavit was based upon his understanding and conclusions regarding documents which he had never seen and hearsay statements made to him by third parties. Adams denied any participation in the transactions which he purported to summarize in his affidavit."

I have examined the Adams affidavit and deposition and do not agree with Lakeshore's position.

■ In Corley v. Life & Casualty Ins. Co. of Tennessee, 111 U.S.App.D.C. 327, 296 F.2d 449 (1961), the court of appeals considered a situation where the affidavit of the plaintiff's attorney, filed in opposition to the defendant's motion for summary judgment, contained hearsay statements. The court observed at p. 450 that

"The affidavit . . . was enough to raise a genuine issue of material fact . . . if it 'set forth such facts as would be admissible in evidence,' as required by Rule 56(e) . . .. We think the rule does not require an unequivocal ruling that the evidence suggested in this particular affidavit would be admissible at the trial as a condition precedent to holding the affidavit raises a genuine issue . . .. Admissibility of testimony sometimes depends upon [several] factors . . ..

"In the particular circumstances here involved, this is sufficient to defeat the motion for summary judgment, because courts are inclined to hold the movant to a strict demonstration that no genuine issue exists."

See also Dyer v. MacDougall, 201 F.2d 265 (2d Cir. 1952) (affiant's lack of personal knowledge). If a witness has made an affidavit and his deposition has also been taken, and the two in some way conflict, the court may not exclude the affidavit from consideration in the determination of the question whether there is any genuine issue as to any material fact. Camerlin v. New York Central R. Co., 199 F.2d 698 (1st Cir. 1952); Wittlin v. Giacalone, 81 U.S.App.D.C. 20, 154 F.2d 20, 22 (1946). See also Semaan v. Mumford, 118 U.S.App.D.C. 282, 335 F.2d 704 (1964). Under these circumstances, I conclude that Lakeshore's motion to strike the Adams affidavit and to once again grant Lakeshore's motion for summary judgment should be denied.

## II

Lakeshore has also renewed "the motion for preliminary injunction filed . . . on October 27, 1972," in which it sought an order

"1. Declaring the tax assessment against Lakeshore Commercial Finance Corporation dated August 2, 1972, in the amount of $44,152.80 to be null, void and of no force or effect and

"2. Enjoining and prohibiting the United States and its agents from proceeding in any matter, including the filing of a notice of tax lien, to enforce said assessment pending either:

"(a) An appellate hearing before the Regional Appellate Division of the Internal Revenue Service to determine the validity thereof; or

"(b) A complete trial in this Court on the merits of the claim of the United States against Lakeshore Commercial Finance Corporation and the entry of judgment herein; or

"(c) The United States, in good faith, making a determination that collection of the sums claimed in said assessment will be jeopardized as a result of the financial condition of Lakeshore Commercial Finance Corporation if collection efforts against it are delayed as a result of this order; and

"3. Enjoining the United States from withholding any funds from Lakeshore Commercial Finance Corporation or its affiliate Lakeshore Financial Corporation based upon the tax assessment asserted against Lakeshore Commercial Finance Corporation dated August 2, 1972, in the amount of $44,152.80."

In my decision and order dated January 5, 1973, 353 F.Supp. at 335, I dismissed this motion as moot

"not only because the court has granted its [i. e. Lakeshore's] motion for summary judgment, but also because

. . . Lakeshore had . . . received a refund from the Internal Revenue Service in the amount of $44,467.61 in connection with this matter."

The record remains devoid of information indicating that the government intends to proceed in any manner which is inconsistent with the injunctive demands set forth at ¶¶ 2 and 3 of Lakeshore's motion. Therefore, the court need only address the claim for declaratory relief which is set forth at ¶ 1.

### A. Due Process

■ Lakeshore challenges on due process grounds Revenue Procedure 69–26, the procedure pursuant to which the assessment was made, because that procedure does not permit an administrative appeal. In a letter dated July 25, 1972, internal revenue service district director W. S. Stumpf explained the 69–26 assessment procedure to Lakeshore as follows:

"In the development of the defense of a refund suit . . . brought by one of several responsible persons subject to an assessment under the provisions of Section 6672 . . . it may become necessary to determine whether a person against whom an assessment has not been made may have been a person within the meaning of Section 6672. In such circumstances it is customary to authorize or recommend that third party actions be instituted against such a person.

"Revenue Procedure 69–26 (1969–2 Cumulative Bulletin 308), Section 2.05 in effect states that in order to maintain a third party action that an assessment be made.

"Section 4.02 further provides that assessments made under the foregoing conditions will not be subject to administrative appeal under District Conference procedures or before a Regional Appellate Division."

Title 26 C.F.R. § 601.106(2)(ii) states that "administrative appeal procedures will apply to 100-percent penalty cases,

except where an assessment is made because of Chief Counsel's request to support a third party action in a pending refund suit. See Rev.Proc. 69–26."

In my judgment, considerations of judicial and administrative economy favor such a consolidation technique. As a third-party defendant, Lakeshore is guaranteed due process. Moreover, the government has indicated that it intends to make no collection attempts on the assessment prior to a liability adjudication. Under these circumstances, I conclude that Lakeshore's due process challenge to the "69–26 assessment" is without merit.

**B. Burden of Proof**

 Lakeshore asserts at pp. 4 and 5 of its reply brief that:

"the issue raised is not . . . whether the government can sue Lakeshore and assert the penalty against Lakeshore in such a suit. The issue is whether or not the Government can relieve itself of any burden of proof in such a suit by making . . . [a 69–26] assessment which is not a determination of liability but is based upon a determination only that the Government wishes to join a party such as Lakeshore in a third-party action . . .

"A revenue procedure which merely gives Lakeshore the opportunity of disproving its liability, prior to any determination of liability by the Government after notice and hearing, is patently inconsistent with the constitutional guarantees of Due Process of law and Equal Protection. Lakeshore has been deprived of the opportunity, at any stage in these proceedings, of rebutting assertions of liability against it. The assessment made against Lakeshore under Rev.Proc. 69–26, made merely for the purpose of eliminating the Government's burden of proof, is unconstitutional."

I believe that Lakeshore's argument with respect to the burden of proof argument is erroneous. It is clear that "under the law an assessment is prima facie correct for all purposes. Generally, the taxpayer bears the burden of disproving the correctness of an assessment." 26 C.F.R. § 601.104(c).

A taxpayer who is assessed pursuant to Rev.Proc. 69–26 and thus becomes a third-party defendant in a tax refund action bears the same burdens of persuasion and proof as he would in administrative proceedings had in connection with assessments, generally. In my judgment, Lakeshore's position that a "69–26 assessment" somehow operates to shift to such a taxpayer burdens of proof and persuasion which otherwise would be borne by the government, is unsupported. See Psaty v. United States, 442 F.2d 1154, 1160 (3rd Cir. 1971); Lesser v. United States, 368 F. 2d 306 (2d Cir. 1966), and Werner v. United States, 374 F.Supp. 558 (D. Conn.1974).

Therefore, it is ordered that the third-party defendant Lakeshore Commercial Finance Corporation's motion to strike the Adams affidavit, motion for summary judgment, and motion for preliminary injunction be and hereby are denied.